FILED

December 5, 2016

TN COURT OF
WORKERS'
COMPENSATION
CLAIMS

Time: 3:24 PM



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT JACKSON

| | |
|---|---|
| **JOE BUFFORD,** | )    **Docket No. 2016-07-0110** |
| **Employee,** | ) |
| **v.** | ) |
| **NORTHWEST TENNESSEE HUMAN** | )    **State File No. 55195-2015** |
| **RESOURCE AGENCY,** | ) |
| **Employer,** | ) |
| **And** | ) |
| **TML RISK MANAGEMENT POOL,** | )    **Judge Allen Phillips** |
| **Insurance Carrier.** | ) |
| | ) |

## EXPEDITED HEARING ORDER DENYING MEDICAL BENEFITS

This matter came before the undersigned Workers' Compensation Judge on November 17, 2016, upon the Request for Expedited Hearing filed by Joe Bufford pursuant to Tennessee Code Annotated section 50-6-239 (2015). Mr. Bufford requests medical treatment of a left shoulder injury pursuant to a settlement agreement dated March 15, 2016. TML, on behalf of Northwest (NWTHRA), denied the medical treatment on grounds that there is no causal relation between the need for treatment and the original injury. Accordingly, the central legal issue is whether Mr. Bufford has shown the requested medical treatment is reasonable, necessary, and causally related to the original injury. For the following reasons, the Court holds Mr. Bufford is not entitled to the requested medical benefits.[1]

### History of Claim

Mr. Bufford sustained a left shoulder injury while working for NWTHRA. The carrier, TML, provided medical treatment with Dr. Blake Chandler, who performed surgery to repair a torn rotator cuff. On January 13, 2016, Dr. Chandler placed Mr. Bufford at maximum medical improvement and assessed a permanent impairment rating.

---

[1] The Court attached a complete listing of the Technical Record and Exhibits admitted at the Expedited Hearing to this Order as an Appendix.

1

On March 15, 2016, the parties appeared before the Court for a settlement approval. In addition to payment of permanent disability benefits, the settlement agreement provided:

> Employer agrees to pay for reasonable and necessary authorized future medical expenses which are directly related to the subject injury, pursuant to Tenn. Code Ann. 50-6-204. Dr. Blake Chandler shall be the designated authorized treating physician for future care (or a panel of physicians shall be provided for future care).

(Ex. 1 at 3.) Upon determining that the proposed settlement terms secured to Mr. Bufford substantially the benefits to which he was entitled under law, the Court approved the settlement. *Id.* at 1.

Following the settlement approval, Mr. Bufford contacted TML for a return appointment with Dr. Chandler. He returned to Dr. Chandler on April 13, 2016, and Dr. Chandler recorded that, "[t]he patient presents today status-post rotator cuff repair with complaints of increased pain starting after lifting grandchildren and using a mop at his new job." (Ex. 4 at 1.) Dr. Chandler injected Mr. Bufford's shoulder and advised him to return in two weeks.

On April 27, 2016, Mr. Bufford returned and reported no improvement. Dr. Chandler recommended an MRI. *Id.* at 3. On May 18, 2016, Dr. Chandler noted the MRI was "positive for partial rotator cuff tear." *Id.* at 7. He told Mr. Bufford to return in one month. *Id.*

On June 28, 2016, Dr. Chandler corresponded with TML and stated:

> Mr. Bufford is a patient of mine that I have been treating for a work related injury sustained to his left shoulder. I cannot say with 100% medical certainty that his new injury is related to his original injury because he was not employed at the time of the new injury.

*Id.* at 9. After receipt of that correspondence, TML denied further medical treatment.

On June 29, 2016, Mr. Bufford filed a Petition for Benefit Determination. He stated as his issue, verbatim: "When they made the settlement with me they gave me life time medical and so I started hurting in my shoulder again and went back to the doctor now they don't want to pay." (T.R. 1 at 2.)

After the parties failed to resolve the issue at mediation, the mediating specialist issued a Dispute Certification Notice and listed under "Defenses" the following: "This is

2

under the Employee's future medical benefits. The ATP has opined he cannot say with 100% medical certainty the current partial rotator cuff tear is related to Employee's original injury." (T.R. 2 at 1.)

Mr. Bufford first requested a file review Expedited Hearing. (T.R. 3.) He later requested an in-person evidentiary hearing. (T.R. 5.) TML filed a response and argued that Dr. Chandler's opinions did not support a causal relationship between the current complaints and the original injury. (T.R. 7.)

The Court conducted an in-person Expedited Hearing on November 17, 2016. Mr. Bufford testified he first encountered the problems for which he sought future medical benefits when he "picked up" a grandchild. He further testified he now works thirty-two hours a week for a nursing home as a housekeeper. He cleans rooms, dusts, and mops. He has held no other jobs since leaving NWTHRA. He attributed all of his shoulder issues to his original injury, and wants TML to stand by "its word" to provide future medical benefits.

At the hearing, Mr. Bufford, offered for the first time a report from Dr. John Kuhn. Dr. Kuhn recorded that Mr. Bufford "currently does housekeeping at a nursing home and works and does things at home with grandchildren and a church." (Ex. 5 at 2.) Mr. Bufford reported "he has always had pain in his shoulder after [the] rotator cuff repair." *Id.* Dr. Kuhn stated his "opinion [was] that indeed his current symptoms are related to his original injury." *Id.* He recommended Mr. Bufford undergo twelve weeks of physical therapy and thought Dr. Chandler should "manage all of those issues, since he has been the treating physician and [Mr. Bufford was there] only for a second opinion." *Id.*

Though he saw Dr. Kuhn on September 12, 2016, Mr. Bufford had not provided the letter to the mediating specialist or filed it with the Clerk. TML's counsel stated he was unaware of the letter. Because Mr. Bufford did not file the record at least ten days before the hearing, as required by Tennessee Compilation Rule & Regulation 0800-02-21-16(6)(a), the Court did not admit the letter into evidence and marked it for identification only.

Mr. Bufford then testified he was told by "the lady" at the Bureau to simply bring the letter to the hearing. He could not identify who told him this but understood her to mean that he neither had to file the letter before the hearing nor provide it to TML until the hearing. The Court noted Mr. Bufford was very sincere and credible in testifying that he was told to proceed in this manner. Accordingly, the Court agreed to consider the record but gave TML the opportunity to review and respond to its contents by subsequent briefing, argument, or proof. The Court allowed TML ten days to do so and TML filed a response on November 22, 2016. (T.R. 8.)

In its response, TML argued that Mr. Bufford failed to file the medical record

3

within the applicable period and the Court should not consider it. Simply because Mr. Bufford proceeded pro se does not allow him to late-file a medical record; TML argued if he were represented, the Court would not allow the late filing. Moreover, the record does not change TML's position that the medical evidence preponderates against a finding of a relation between Mr. Bufford's current complaints and the original injury.

TML argued the statements of Dr. Kuhn indicated he neither had a full history of Mr. Bufford's activities after the original injury nor did he have "the benefit of Dr. Chandler's records showing a subsequent injury." (T.R. 8 at 3.) Because Dr. Chandler is "most familiar with Bufford's clinical history," his opinion should "be given much more weight than Dr. Kuhn's single visit where he rendered an opinion without being privy to all of the facts and circumstances surrounding Bufford's complaints." *Id.*

### Findings of Fact and Conclusions of Law

*Standard Applied*

Mr. Bufford bears the burden of proof on all prima facie elements of his workers' compensation claim, including causation. Tenn. Code Ann. § 50-6-239(c)(6) (2015); *see also Buchanan v. Carlex Glass Co.*, No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *5 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015). However, Mr. Bufford need not prove every element of his claim by a preponderance of the evidence at an Expedited Hearing stage in order to obtain relief. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). Rather, he must come forward with sufficient evidence from which this court might determine he is likely to prevail at a hearing on the merits. *Id.*; Tenn. Code Ann. § 50-6-239(d)(1)(2015).

*Analysis*

The sole issue for determination is whether Mr. Bufford is entitled to further treatment pursuant to the future medical benefits provision of the settlement agreement. After careful review of the evidence, the Court holds he is not.

As an initial matter, the Court notes Mr. Bufford has chosen to represent himself, which is his right. It is well-settled, however, that unrepresented litigants must comply with the same standards to which represented parties must adhere. *Watson v. City of Jackson*, 448 S.W.3d 919, 926 (Tenn. Ct. App. 2014). As one court has observed:

> [p]arties who decide to represent themselves are entitled to fair and equal treatment by the courts. The courts should take into account that many pro se litigants have no legal training and little familiarity with the judicial system. However, *the courts must also be mindful of the boundary between*

4

*fairness to a pro se litigant and unfairness to the pro se litigant's adversary.* Thus, the courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe.

*Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003)(Emphasis added).

TML argued precisely the above-quoted language, namely that this Court may not, in an effort to be fair to Mr. Bufford, cross the line of demarcation where its actions become unfair to TML. TML asserts that this Court would have refused to consider a late-filed record if Mr. Bufford had been represented by counsel. However, the Court need not consider that contingency because Mr. Bufford proceeded pro se and the Court considered the admissibility of the record in that light.

In considering the contested evidence, the Court recognizes the rule regarding the filing of medical records. Tennessee Compilation Rule & Regulation 0800-02-21-.16(6)(a) provides that "all medical records designated by the parties to be presented as evidence at a scheduled hearing shall be filed with the Bureau not later than (10) business days before the scheduled hearing date." Mr. Bufford did not file the record in question. However, the applicable rule goes on to state, *"except for good cause shown,"* as determined by the workers' compensation judge, failure to comply with timely filing *may* result in exclusion of the record. *Id.* (Emphasis added). Further Rule 7.01 of the Practices and Procedures of this Court provides that, *"absent extraordinary circumstances and approval of the assigned Judge,* evidence may not be considered if submitted after the expiration of the applicable rules and regulations." (Emphasis added). The Court finds good cause for consideration of Dr. Kuhn's record under the narrow and specific circumstances of this case and will do so in determining whether Mr. Bufford came forward with sufficient evidence to establish a causal connection between his injury and the need for further medical treatment.

In so doing, the Court considered Mr. Bufford's testimony that someone within the Bureau told him simply to bring Dr. Kuhn's letter to the hearing. This testimony gives the Court pause because of the relative novelty of the current system of dispute resolution. Given the newness of the system, all litigants are understandably learning how to negotiate the steps involved in contested claims. The pro se litigant labors under more confusion. Hence, the Court afforded Mr. Bufford every opportunity to present his case and, given the potential that the Bureau accidentally misled him regarding proper procedure, considered the late filed record. However, the Court considered the record fairly, impartially, and with no presumption in favor of Mr. Bufford. *See* Tenn. Code Ann. § 50-6-116 (2015).

In claims for post-settlement medical treatment, the employee has the burden of establishing the link between the original injury and any need for additional treatment.

5

*Greenlee v. Care Inn of Jefferson City*, 644 S.W.2d 679, 680 (Tenn. 1983). Mr. Bufford must show, to a reasonable degree of medical certainty, that the incident "contributed more than fifty percent (50%) in causing the . . . disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(14)(C)(2015). Further, as the authorized physician, Dr. Chandler's opinion regarding causation "shall be presumed correct but this presumption shall be rebuttable by a preponderance of the evidence." *Id.* at § 50-6-102(14)(E)(2015).

Dr. Chandler opined that he could not "say with 100% medical certainty that his new injury is related to his original injury because he was not employed at the time of the new injury." (Ex. 4 at 9.) As noted, Mr. Bufford does not have to prove his injury was "100%" the cause of his injury, but instead more than fifty percent. However, even against this standard, the Court cannot conclude Mr. Bufford has established a causal link between his original injury and his current need for treatment. Dr. Chandler specifically noted that Mr. Bufford was "not employed at the time of the new injury," a clear reference to his job at NWTHRA. Moreover, at the initial evaluation, Dr. Chandler recorded a history that Mr. Bufford's pain began "after lifting grandchildren and using a mop at his new job." *Id.* at 1. Importantly, Mr. Bufford admitted he lifted a grandchild and used a mop at his new job. Tennessee law has long held that medical proof is not to be "read and evaluated in a vacuum" but, instead "must be considered in conjunction with the lay testimony of the employee as to how the injury occurred and the employee's subsequent condition." *Thomas v. Aetna Life and Cas. Co.*, 812 S.W.2d 278, 283 (Tenn. 1991). Mr. Bufford's testimony is consistent with both Dr. Chandler's recorded history and causation opinion.

When faced with conflicting medical testimony, this Court must determine which expert opinion to accept and which opinion contains the more probable explanation of causation. *Thomas,* 812 S.W.2d at 283. When making this determination, the Court should consider "the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information by other experts." *Orman v. Williams Sonoma, Inc.*, 803 S.W.2d 672, 676 (Tenn. 1991). Further, it is reasonable to conclude that the physician "having the greater contact with [the injured worker] would have the advantage and opportunity to provide a more in-depth opinion, if not a more accurate one." *Id.* at 677.

In this case, the Court must presume Dr. Chandler's opinion to be correct and Mr. Bufford must rebut that presumption in order to prevail. Mr. Bufford presented Dr. Kuhn's opnion in an effort to rebut the presumption. The Court holds he failed to do so.

Dr. Kuhn saw Mr. Bufford only one time, and provided no support for his conclusory opinion that Mr. Bufford's current complaints are related to the original injury. Applying the factors of *Orman*, the Court finds Dr. Chandler is in the best position to opine regarding causation. He saw Mr. Bufford before and after the most recent

6

complaints, and has spent more time with him in the clinical setting, a fact recognized by Dr. Kuhn. He explained the lack of a causal connection by pointing out the intervening lifting of grandchildren, working a new job, and Mr. Bufford's long absence from NWTHRA. Taken in its totality, the evidence does not support a finding that Mr. Bufford would likely prevail at a hearing on the merits in proving a causal relationship between his current complaints and his original injury. Accordingly, the Court denies his claim for additional medical benefits.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Bufford's claim against NWTHRA and TML for future medical benefits is denied at this time.

2. **This matter is set for a Scheduling/Status Hearing on February 22, 2017, at 9:30 a.m. Central Time.**

**ENTERED this the 5ᵗʰ day of December, 2016.**

_____
**Judge Allen Phillips**
**Court of Workers' Compensation Claims**

Scheduling (Status) Hearing:

A Scheduling/Status Hearing has been set with **Judge Allen Phillips, Court of Workers' Compensation Claims. You must call toll-free at 731-422-5263 or toll-free 855-543-5038 to participate in the Scheduling Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

7

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a

statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

## APPENDIX

Exhibits:
1. Order Approving Workers' Compensation Settlement Agreement (March 15, 2016;
2. Affidavit of Joe Bufford (filed with first Request for Expedited Hearing, Sept. 27, 2016);
3. Affidavit of Joe Bufford (filed with second Request for Expedited Hearing, Oct. 17, 2016);
4. Medical Records of Dr. Blake Chandler; and
5. Medical Record of Dr. John Kuhn.

Technical record:[2]
1. Petition for Benefit Determination;
2. Dispute Certification Notice;
3. First Request for Expedited Hearing (file review only);
4. Order For File Review Determination of Expedited Hearing;
5. Second Request for Expedited Hearing (in-person);
6. Employer's Response to PBD;
7. Employer's Position Statement (pre-hearing brief); and
8. Employer's Post-Hearing Response.

---

[2] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 5th day of December, 2016.

| Name | Certified mail | First Class Mail | Via Email | Service sent to: |
|---|---|---|---|---|
| Joe Bufford, Self-Represented Employee | X | X | | 327 North Cherry St. Puryear, TN 38251 |
| Fred N. McLean, Esq., Attorney for Employer | | | X | tina@mcleanlaw.us |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims

10